IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE ARCADIO TURCIOS, § | |
| § | |
| Petitioner, § | |
| § | |
| § | |
| v. § | CIVIL ACTION NO. H-97-0515 |
| § | |
| DOUG DRETKE, § | |
| § | |
| Respondent. § | |

**MEMORANDUM OPINION AND ORDER**

Jose Arcadio Turcios, a Texas prisoner, has filed a petition for a writ of habeas corpus challenging five state convictions under 28 U.S.C. § 2254. Respondent Doug Dretke has filed a motion for summary judgment regarding the merits of the petition, and Turcios has responded. After considering the pleadings, the response, the applicable law, and the records, the court **GRANTS** the motion and **DISMISSES** the petition.

**I. Procedural History**

Turcios was charged in an indictment which included two counts of capital murder and one murder. The charges stemmed from a robbery-murder of a cab driver on Christmas Day 1984. He entered a plea of not guilty and the State subsequently dismissed the two capital murder counts. Turcios was tried before a jury which found him guilty of the murder charge and sentenced him to ninety-nine years in prison. *State v. Turcios*, No. 416401 (228th Dist. Ct., Harris County, Tex. Jul. 25, 1985). Turcios appealed; the Court of Appeals for the First Judicial District of Texas affirmed the trial court's judgment in an unpublished opinion. *Turcios v. State*, No. 01-85-00660-CR (Tex.

App.-Houston [1st Dist.] Jul 24, 1986). The Texas Court of Criminal Appeals refused the subsequent petition for discretionary review on November 12, 1987. *Turcios v. State*, No. 997-86.

Turcios filed an application for a writ of mandamus and three applications for a state writ of habeas corpus. The Court of Criminal Appeals denied the motion for leave to file a mandamus application, without a written order, on January 25, 1989. *Ex parte Turcios*, No. 19,720-01. The first state habeas application was denied without a written order on June 19, 1991. *Ex parte Turcios*, No. 19,720-02. The second application was denied without a written order on October 19, 1994. *Ex parte Turcios*, No. 19,720-03. The Court of Criminal Appeals dismissed the third application as successive under Section 4, Article 11.07 of the Texas Code of Criminal Procedure on January 29, 1997. *Ex parte Turcios*, No. 19,720-04. The instant petition for a federal writ of habeas corpus was subsequently filed with this court.

## II. Petitioner's Grounds for Relief

Turcios presents the following claims:

1. The evidence was factually insufficient to support the verdict.

2. The Texas First Court of Appeals violated Turcios's right to equal protection by refusing to apply state law regarding the issue of sufficiency of the evidence.

3. The State violated Turcios's right to a fair trial by allowing perjured testimony.

4. Turcios was denied the right to testify at his trial.

5. The trial counsel was ineffective by not filing a motion for new trial alleging the State's failure to preserve potentially useful evidence.

6. Turcios's appellate counsel was ineffective because the attorney did not argue that was denied an effective trial attorney.

## III. Factual Background

The First Court of Appeals summarized the following facts and events relating to the offense and the subsequent investigation, as they were presented at trial:

> The deceased, David Lee Engelhardt, was an independent contractor cab driver with Liberty Cab Co. On December 24, 1984, he attended a Christmas Eve church service until about midnight. He left the service at about 12:30 a.m., December 25. That evening he was driving cab unit 1835.
>
> At about 2:00 a.m. that night, Bill Bruner was returning to his home in a trailer park at 7245 Fairbanks, North Houston, Harris County. As he approached the entrance to the park, he observed a cab parked about 60 yards off the road on a dirt track. He positioned his truck so that his headlights were directed at the cab.
>
> He observed that the headlights were on and that there were two people in the cab. He saw the passenger door open and an individual get out and walk around the front of the cab to the driver's door. That individual then opened the driver's door and the driver got out. The two then walked about 15 feet to the north of the cab.
>
> Bruner then drove to a nearby convenience store and, about two minutes later, returned to his trailer, which had an unobstructed view of the area. He was joined by his neighbor, Tom Blake, who had just returned from walking his dog. The two men observed some movements and then heard three or four shots fired. They saw one individual return to the cab and begin to search it. He then turned back and fired three or four more shots.
>
> The area was dark except for the lights from the cab. Bruner and Blake testified that they thought the individual to be approximately 5'5" to 5'6" tall or slightly taller than the cab. Blake also said that the individual had a pompadour hairstyle and was, he thought, Hispanic.
>
> Bruner notified the authorities. A short time later, they saw the cab exiting the trailer park. He and Blake then drove to the area and saw the deceased's body. They returned to await the authorities.
>
> Detective Albert Diaz of the Homicide Division of the Harris County Sheriff's Department arrived at the scene at about 3:00 a.m. He observed a contact gunshot wound behind the victim's left ear and wounds in the chest and arm. He found $ 2.22 in change and a billfold empty of money. The victim wore no jewelry, but Diaz noticed discolorations on the left wrist consistent with wearing a watch. At about 5:40 a.m., after ascertaining the license plate, unit number, and description of the cab, Diaz caused a "pick-up" to be broadcast for the cab.
>
> At about 6 a.m., off-duty Officer William Lunsford, of the Houston Police Department, was traveling on Highway 290 near the 610 loop. He observed a vehicle matching the radio description drive onto the loop from 610. He pulled onto a service road and next saw that the vehicle pulled off the roadway. He put a spotlight on the cab. The trunk was open, the car was jacked up, and appellant was crouched by the right front tire. Lunsford placed a radio call for back-up and

      continued to observe appellant. While he waited, he observed the appellant move about 15 to 20 feet from the cab onto the grass median between the freeway and the service road. Appellant then returned to the cab.

      A marked patrol car arrived and appellant was taken into custody. Search of his person revealed $154 in cash and silver colored Timex watch, which appeared to have traces of blood on it. The watchclasp was broken and some links were missing. No weapons were found on appellant's person.

      Search of the grassy area, to which Lunsford had observed appellant move, revealed a .22 caliber pistol subsequently determined to be the weapon used to kill the deceased.

      Investigation of the cab itself revealed blood in the driver's seat, later determined to be the same type as the deceased's blood group. A spent bullet was also recovered. A few fingerprints were found which were not sufficiently clear to be identified.

*Turcios v. State*, Slip. Op., No. 01-85-00660-CR, at 1-3.

## IV. The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 120 S.Ct. 1495, 1519 (2000)*, citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 123 S.Ct. 362, 365 (2002). A state

4

court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 120 S.Ct. at 1520, 1523. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 1521

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

These standards will be applied to the pending summary judgment motion.

### V. Analysis

A. Sufficiency of the Evidence

Turcios complains that the evidence was insufficient to support his conviction. The standard of review for an insufficient evidence claim in a federal habeas corpus proceeding is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999), *citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez*

*v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *quoting United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

Turcios was found guilty of murder. As related above in the decision by the First Court of Appeals, there was abundant evidence linking Turcios to the crime. Only one person, a Hispanic male, was seen with the victim before several shots were fired. The description of the person seen with the victim fit that of Turcios. The victim died from gunshot wounds. The last person with the victim drove off alone in the victim's cab shortly after the shots were heard. Turcios was found alone next to the victim's taxicab less than four hours after the shooting occurred. Turcios walked away from the cab when a policeman spotted him. The police officer saw Turcios walking to the area where the murder weapon was later found. When Turcios was arrested, he had a large amount of cash and a watch identical to that worn by the victim. The same watch had some blood on it. The victim was missing his watch and his wallet was empty when he was found. The Court of Appeals concluded that the cumulation of facts and circumstances presented would support a finding beyond a reasonable doubt that Turcios had committed the murder. *Turcios v. State*, Slip. Op., No. 01-85-00660-CR, at 6-8.

The First Court of Appeals held that evidence was sufficient to sustain the conviction. This court agrees that there was ample evidence to support the jury's finding of guilt. *See United States v. Hefferon*, 314 F.3d 211, 224 (5th Cir. 2002). The above facts revealed in the appellate court's findings are supported in the trial court's statement of facts (SOF) which also contains additional testimony and exhibits providing details which are clearly consistent with the determination that Turcios had committed the murder.

Sergeant James M. Watson, a crime scene technician for Harris County Sheriff's Department, testified that he took part in the murder investigation. III SOF 172-74. During the investigation, Watson found several spent shells and two live shells near the victim's body. III SOF 190-91. He also saw a trail of blood. III SOF 192. Watson inspected the cab and recovered a bullet from the left front driver's side of the car. III SOF 198. He also found another bullet hole in the front passenger's headrest. III SOF 199. In addition, Watson found blood on the driver's seat and on the floorboard in front of the seat. III SOF 201, 203.

C.E. Anderson, a firearms examiner for the Houston Police Department, gave testimony regarding the weapon along with the spent cartridges and bullets that were found during the investigation. III SOF 257-84. One of the bullets examined had been recovered from the cab. III SOF 198. Another bullet came from the Harris County Morgue. III SOF 268-69. Anderson testified that he tested the bullets and concluded that they were fired by the gun that was found near Turcios when he was arrested. III SOF 268-69.

Harris County Assistant Medical Examiner Eduardo Bellas, M.D., testified about the victim's autopsy report. III SOF 285-92. According to Dr. Bellas, the victim suffered a wound from a gun placed directly behind his left ear. III SOF 294. However, the wound was not fatal and the victim would have been able to get out of the cab and walk some distance after having been shot. III SOF 296. There was also a gunshot wound to the upper chest and a gunshot wound of the upper arm. III SOF 296. The arm wound was not fatal; however, the chest wound was. III SOF 300-02.

From the evidence, a rational jury could have concluded that Turcios had shot the victim from behind while two men were sitting in the taxicab. Turcios then forced the wounded victim out of the car and took him to a field where he shot him in the chest and robbed him of his watch and

money. Turcios then fled in the victim's cab. In light of the record, the state courts' rejection of Turcios's sufficiency of the evidence claim is not an unreasonable application of *Jackson v. Virginia*, and he is not entitled to relief under AEDPA. *Ramirez v. Dretke*, 398 F.3d 691, 693-95 (5th Cir. 2005); *Hughes*, 191 F.3d at 619.

Along with the federal challenge to the sufficiency of the evidence, Turcios claims that the Court of Appeals failed to apply the proper state law regarding sufficiency of the evidence. State law questions are outside the province of a federal court considering habeas challenges. *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), *citing Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991). Therefore, this court will not grant relief where there has been no showing of a federal law violation. *Id. See also Weeks v. Scott*, 55 F.3d 1059, 1062-62 (5th Cir. 1995) (it is not a federal habeas court's function to review a state's interpretation of its own law).

B. Perjured Testimony

Turcios contends that the State engaged in prosecutorial misconduct and denied Turcios a fair trial when it knowingly allowed two police officers, Diaz and Lunsford, to present contradictory testimony. *See Petition,* Docket Entry No. 1, at 5-6. Turcios concludes that the contradictory testimony must have been perjury. However, Turcios provides no factual allegations to support his argument. It is well established that "conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983), *citing Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir. 1982). Moreover, the mere fact that there were inconsistencies in two of the witnesses' testimony is insufficient to prove perjury. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001), *citing Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). This claim must be rejected because Turcios has failed to present any facts which would demonstrate that he was denied

8

a fair trial due to the use of perjured testimony. *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996).

### C. Right to Testify and Ineffective Assistance of Counsel - Procedural Bar

Turcios claims that he was denied of his right to testify at trial. *See Petition,* Docket Entry No. 1, at 5-6. He alleges that he told his attorney before and during the trial that he wished to testify; however, his attorney told him not take the witness stand due to strategic and tactical considerations. *Id.* In spite of Turcios's insistence, his attorney did not call him as a witness. *Id.* Turcios also claims that his trial counsel was ineffective by not filing a motion for a new trial based on the State's alleged failure to preserve potentially useful evidence. *Id*. at 8-9. He further claims that his appellate counsel was ineffective when he did not file a motion for new trial and failed to argue ineffective assistance of trial counsel on direct appeal. *Id.* at 9-10.

These grounds were first raised in Turcios's third state habeas application which was dismissed as successive under TEX. CODE CRIM. PRO. art. 11.07 § 4.[1] *Ex parte Turcios*, No. 19,720-04. A federal habeas claim is barred from review if the last state court to consider the claim based on an "independent and adequate state-law procedural ground. *Cotton v. Cockrell*, 343 F.3d 746, 754 (2003). Texas has had an abuse of the writ doctrine which has been codified in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PRO. art. 11.07 § 4; *Emery v. Johnson*, 139 F.3d 191, 195-96 (5th Cir. 1997). It has been consistently held that Texas' abuse-of-writ rule is ordinarily an

---

[1] Turcios had previously asserted ineffective assistance of counsel in his first state habeas application. *Ex parte Turicios*, No. 19,720-02 at 20. However, the underlying facts presented in that application differed from those presented in the later state habeas application (No. 19,720-04) and in the current habeas petition before this court. Consequently, the grounds raised in the previous state habeas proceeding are not subject to review. *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (habeas petitioner challenging state conviction may not submit facts in federal court that were not presented in state court); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

"adequate and independent" procedural ground on which to base a procedural default ruling. *Henderson v. Crockwell*, 333 F.3d 592, 605 (5th Cir. 2003); *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004). Therefore, Turcios's claims regarding his right to give testimony and receive effective assistance of counsel are subject to a procedural bar because he has failed to show cause for his procedural default and he has not presented any evidence that he is actually innocent of the offense. *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000); *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).

Moreover, there is no support for the claims which are procedurally barred. Turcios complains that he was not allowed to testify at his trial. It is well established that a defendant has a constitutional right to testify at his trial in his behalf. *Rock v. Arkansas*, 107 S.Ct. 2704, 2709-10, (1987). However, a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand. *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991). Outside of Turcios's own statement, there is no evidence in the habeas record to prove his claim that he was denied the right to testify at his trial. Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable. *Id*. Consequently, the claim must fail. *Id*.

Turcios's ineffective assistance of counsel claims also lack any support. As stated above Turcios states that his trial counsel should have filed a motion for a new trial based on the State's alleged failure to preserve evidence and that his appellate counsel should argued that the trial attorney was ineffective for failing to file such a motion. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. A

federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). To assert a successful ineffectiveness of counsel claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 2064. The habeas petitioner has the burden of proving ineffective assistance of counsel. *United States v. Chavez*, 193 F.3d 375, 378-79 (5th Cir. 1999), *citing Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994). The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Like his claim regarding his right to testify, Turcios's argument regarding effective assistance of counsel is conclusory. Turcios presents no facts indicating that the state withheld critical evidence which would have proven his innocence. His trial attorney cannot be found to be ineffective where there is no showing that there would have been any basis behind a motion for new trial. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). It also follows that the appellate attorney would have no reason to challenge the trial attorney's effectiveness and that his failure to raise such a meritless issue would not be a basis for federal habeas relief. *See Sharp v. Puckett*, 930 F.2d 450 (5th Cir. 1991). Without any evidentiary support, Turcios's allegations regarding ineffective assistance of counsel must fail. *United States v. Chavez*, 193 F.3d at 378-79). *See also Ross*, 694 F.2d at 1011-12. Therefore, this action should be dismissed because Turcios has failed to demonstrate that he is entitled to habeas relief.

### VI. Conclusion

The court **ORDERS** the following:

1. The Motion for Summary Judgment, (Docket Entry No. 6) is **GRANTED**.

2. This action is **DISMISSED** with prejudice.

3. Under 28 U.S.C. § 2253, petitioner needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his petition. To obtain a certificate of appealability, petitioner must make a substantial showing of the denial of a constitutional right. *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, petitioner must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, petitioner has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the issuance of a certificate of appealability in this action.

**SIGNED** on this 29th day of November, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE